UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| Suzee E. Branch, | : | Case No. 1:07CV0026 |
| | : | |
| Plaintiff | : | Judge Kathleen O'Malley |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| Defendant | : | |

This action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of defendant's final determination denying plaintiff's claim for supplemental security income benefits (SSI), 42 U.S.C. §1381 et seq., is pending decision upon the parties' submissions on the merits, pursuant to which plaintiff seeks entry of final judgment in her favor, alternatively, an order of remand, and defendant seeks final judgment upholding the decision below.

Plaintiff applied for benefits on July 17, 2000, alleging an onset date of December 31, 2001. In an accompanying Disability Report - Adult the questions "What are the illnesses, injuries or conditions that limit your ability to work?" and "How do your illnesses, injuries or conditions limit your ability to work?" were answered "asthma, COPD, emphysema, depression, obesity, fibrodmyalgia [sic], arthritis, gerd [?], high B.P." and "I can't breath well, my depression makes me unable to function at times. I can only sit or stand for short periods. I lay almost always. My hands & legs hurt continuously."

Upon denial of plaintiff's claim on the state agency level hearing de novo before an

Administrative Law Judge (hereinafter ALJ) was requested. Evidentiary hearing, at which plaintiff was represented by counsel, was held on March 6, 2006. Also testifying at that proceeding was a vocational expert, Mr. Ted Macy.

When asked by her counsel why she is unable to work the plaintiff testified:

> A. It's very difficult for me to use my hands. I have severe carpal tunnel and neuropathy from diabetes. It's hard for me to pick things up. It's hard for me to hold things. It's hard for me to brush my hair. It's hard for me to do daily tasks because my hands hurt and are numb all the time. It's hard for me to push the vacuum cleaner. My hands get numb and hurt. I also have trouble breathing. I have COPD and asthma. I've had asthma all my life. It's hard for me to walk from place to place because I can't breathe. If I clean my house, I have to stop to rest to catch my breath. If I do anything, I have to stop to catch my breath. I have pain in my back. It's hard for me to sit. It's hard for me to stand. It's hard for me to walk. I lay most of the day, which causes depression. That's about it.

On May 24, 2006 the ALJ entered his opinion denying plaintiff's claim. That decision became defendant's final determination upon denial of review by the Appeals Council on November 17, 2006. While the ALJ did not use the format this Court normally finds in this type of action, the Findings contained within the Findings of Fact and Conclusions of Law section of his decision were:

> 1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: obesity[1] (Exhibits 6F, 9F, 10F, 14F, 17F, and 23F), chronic obstructive pulmonary disease (Exhibits 1F, 3F, 6F, 8F, 9F, 10F, 16F, 20F and 23F), bilateral carpal tunnel syndrome (Exhibits 17F and 21F), fibromyalgia (Exhibits 1F, 4F, 6F, 14F, and 20F), and a depressive disorder (Exhibits 1F, 7F, 17F, 20F, and 25F) (20 CFR 416.920(c)).

---

[1] Although neither her counsel nor the ALJ asked the plaintiff her weight, a medical record from about six months earlier reflects that she then weighed 375 pounds. She is 5' 2" tall.

2

3. The claimant does not have an impairment of combination of impairments that meets or that is medically equivalent to the requirements of an impairment listed in the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1) (20 CFR 416.920(d), 416.925 and 416.926).

4. I have considered the evidence and I find that the claimant retains the residual functional capacity to perform a range of light work (20 C.F.R. §§404.1567. 416.967). Specifically, she can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently, can sit, stand and/or walk for 6 hours each in an 8-hour day with normal breaks. She cannot do work requiring rapid, repetitive hand of finger movements, bilaterally. She must avoid concentrated exposure to fumes, odors, dust, gases, and poorly ventilated areas. She is limited to simple, routine, low stress tasks.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 23, 1958. She was 43 years old on the alleged disability onset date and is 48 as this decision is issued, a younger individual at all relevant times(20 CFR 461.963).

7. The claimant has a limited 11th grade education and is able to communicate in English (20 CFR 416.968).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 416.964).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

Although not clearly articulated as such, the plaintiff's primary argument on this appeal is that the ALJ erred in not accepting the opinion of plaintiff's treating physicians that she is disabled. i.e., that the ALJs decision violates what is commonly referred to as the treating physician rule.

As was recently reiterated in Howard v. Commissioner of Social Security, 276 F.3d 235, 240

6 (6th Cir. 2002), citing to <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985), while it is often said that the opinion of a treating physician on the ultimate issue of disability is not binding, <u>see</u>, <u>Le Master v. Weinberger</u>, 533 F.2d 337 (6th Cir. 1976) that is not always the case. In <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984) the court stated the controlling rule to be "Indeed, it has long been the law that substantial deference--and, if the opinion is uncontradicted, complete deference--must be given to such opinions and diagnoses." <u>See</u> <u>also</u>, <u>Colwell v. Gardner</u>, 386 F.2d 56, 72 (6th Cir. 1967); and <u>Walston v. Gardner</u>, 381 F.2d 580, 585 (6th Cir. 1967).

To be entitled to significant weight the conclusory opinion of a treating physician must be supported by clinical or diagnostic findings. <u>Kirk v. Secretary of Health and Human Services</u>, 667F.2d 524, 538 (6th Cir. 1981). However, it is not necessary that such supporting detail be contained in the same document in which the physician's opinion is expressed. It is sufficient if that opinion is supportable by other medical evidence in the record, including clinical or diagnostic findings of other physicians. <u>See</u>, <u>Garner v. Heckler</u>, 745 F.2d 383, 391 (6th Cir. 1984).

Elucidating upon this principle, the Sixth Circuit stated in <u>Wilson v. Commissioner of Social Security</u>, 378 F.2d 541, 544 (6th Cir. 2004) that, pursuant to 20 C.F.R. §404.1527(d)(2), when an ALJ declines to accept the opinion of a treating physician he/she must provide a good reason for doing so, the court adopting the reasoning in <u>Snell v. Apfel</u>, 177 F. 2d 128, 134, (2nd Cir. 1999) that "'The requirement of reason–giving exists, in part, to let claimants understand the disposition of their cases' particularly to 20 C.F.R. §404.1527(d)(2), when an ALJ declines to accept the opinion of a treating physician he/she must provide a good reason for doing so, the court adopting the reasoning-giving exits, in part, to let claimants understand the disposition of their cases' particularly in situations where a claimant knows that his physician has deemed his disabled and therefore

4

"might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied," adding that the requirement [of the regulation] also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." It is patent that the "good reason" requirement means just that, and not simply my only reason or an insubstantial reason.

There is a problem with the ALJ's analysis of the medical evidence, as he incorrectly attributed a Medical Source Statement: Patient's Physical Capacity form dated November 1, 2005 to Dr. Michael Orra, who he identified as the plaintiff's treating internist, when in fact that document had been completed by Dr. Joy Marshall. In a statement written by the plaintiff in January or February 2006 she stated that Dr. Orra had passed away on January 1, 2006 and that Dr. Marshall had taken over for him. While it is not absolutely clear that Dr. Marshall and Dr. Orra were associated in their practices, their office addresses were the same. This being so, this Court has misgivings as to the ALJ's basis of discounting Dr. Marshall's opinion based upon factors attributable to Dr. Orra.

Nevertheless, this Court finds that the considerations identified by the ALJ do not meet the "good reason" standard, those being that "Dr. Orra's opinion is inconsistent with his progress notes of record and conflicts with other evidence."

The ALJ found the fact that Dr. Orra (and another physician) prescribed exercise as part of the plaintiff's treatment regimen to indicate that she is not disabled. In this Court's opinion, recommending to a morbidly obese individual that she try to lose weight through exercise is in no way inconsistent with the conclusion that at the time such advice was given the individual was incapable of working.

5

The ALJ also fly-specked an item from the doctor's patient note of July 21, 2004 reading "continued to have LBP [low back pain] but alleviated by Darvocet." as evidence that the plaintiff's physical problems were not of the severity she alleges. This Court finds that this one line, indicating that a potent pain killer eased the plaintiff's pain, excerpted from the totality of the doctor's patient notes does not create an inconsistency with the conclusion that the plaintiff is disabled.

Dr. Marshall in fact completed two Medical Source Statement forms, the first under date of November 1, 2005 and the second February 28, 2006. Both fully support the plaintiff's claim of disability.

In the first of those Dr. Marshall stated that the plaintiff was incapable of any lifting, was limited in her ability to stand/walk and to sit. In support of each of those determinations Dr. Marshall set out her medical findings, which included morbid obesity, fibromyalgia, back pain and a recently performed hernia repair. In completing the 2006 form Dr. Marshall again stated that the plaintiff was incapable of any lifting/carrying, citing as the medical findings supporting that assessment "severe carpal tunnel [unreadable] by EMG 10/1/05; umbilical hernia, back pain, COPD." In completing the form she explicitly stated "can not work." She also referenced the plaintiff's marked obesity, diabetic neuropathy and back pain as physically limiting factors.

Dr. Marshall also completed a "Medical Source Statement: Patient's Mental Capacity" form in November 2005, and checked off that the plaintiff's ability to deal with work stresses and to complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods was at the "poor to none" level. While Dr. Marshall is not a mental health professional her assessment in these regards is consistent with the fact that a clinical psychologist, Dr. Michael

Leach, who evaluated the plaintiff in November 2003 upon referral of the Social Security authorities, assigned the plaintiff a GAF rating of 49, placing her at the upper limit of "some impairment in reality testing or communications," connoting "is unable to work." Ignoring this GAF, the ALJ selectively read Dr. Leach's report, stating "Dr. Leach was of the opinion that her depressive disorder caused moderate limitations in her ability to withstand the stresses of daily work and to maintain concentration, persistence, or pace." In fact, Dr. Leach's "Summary and Conclusions" were:

> 1. The claimant's ability to relate to others is mildly impaired. <u>Her current level of depressive symptoms is likely to impact her ability to effectively communicate with others in the workplace.</u>
>
> 2. The claimant's ability to understand, remember and follow instructions is mildly impaired. <u>The nature of her mood disturbance is likely to be increasingly impaired with increased stressors leading to increased difficulty in her ability to follow and understand directions.</u>
>
> 3. The claimant's mental ability to maintain attention, concentration, persistence, and pace to perform simple tasks is moderately impaired. <u>The nature of her depressed mood and ability to maintain her pace is likely to worsen with increasing stressors.</u>
>
> 4. The claimant's mental ability to withstand the stresses and pressures associated with daily work actively is moderately impaired. <u>It is likely that the mood disturbance this individual is presenting would be exacerbated by the stresses and pressures of daily work.</u>

(Emphasis added.) If, as he stated, the ALJ considered Dr. Leach's opinion to be "consistent with the evidence of record" and gave that opinion "full weight" he should have concluded that Dr. Leach's report supported, rather than contradicted, the plaintiff's claim.

The ALJs rationale for rejecting Dr. Marshall's opinion was "Dr. Marshall did not provide

the basis for her opinion and the record contains no treatment notes or other documentation from Dr. Marshall. In addition, Dr. Marshall's statement that Ms. Branch cannot lift any weight and cannot stand, walk, or sit during an eight-hour workday is inconsistent with her ability to live independently. For these reasons, I assign her opinion less weight." This Court finds that the foregoing does not meet the "good reason" standard.

As an associate of and the successor to Dr. Orra following his death Mr. Marshall was certainly qualified to offer an opinion based upon review of the plaintiff's patient notes with Dr. Orra and her short personal relationship with the plaintiff. The ALJ's statement that Dr. Marshall did not provide the basis for her opinion is simply wrong, as in completing both Medical Source Statement forms the doctor set out the medical findings that she looked to in support of her opinions.

This Court is at a total loss to understand the ALJ's reference to the plaintiff's "ability to live independently." Her testimony at the de novo hearing painted a picture of someone primarily dependent on others.

> Q. Ms. Branch, in your own words, tell us today why you feel you can't work and haven't been able to work since June of '03?
>
> A. It's very difficult for me to use my hands. I have severe carpal tunnel and neuropathy from diabetes. It's hard for me to pick things up. It's hard for me to hold things. It's hard for me to brush my hair. It's hard for me to do daily tasks because my hands hurt and are numb all the time. It's hard for me to push the vacuum cleaner. My hands get numb and hurt. I also have trouble breathing. I have COPD and asthma. I've had asthma all my life. It's hard for me to walk from place to place because I can't breathe. If I clean my house, I have to stop to rest to catch my breath. If I do anything, I have to stop to catch my breath. I have pain in my back. It's hard for me to sit. It's hard for me to stand. It's hard for me to walk. I lay most of the day, which

causes depression. That's about it.[2]

Q. Okay. Let's go back and go over some of these. I want to start with your hands.

A. Okay.

Q. How long have you had symptoms in your hands?

A. I've had pain in my hands for years but it's gotten worse since—I'm assuming since the neuropathy from the diabetes but it was just recently diagnosed with carpal tunnel.

Q. And are you using any kind of wrist splints or anything like that?

A. Yeah. Yeah, I have the wrist braces but they don't seem to take away the pain. It doesn't help with me being able to pick things up or being able to wash dishes or brush my hair or the braces don't really do anything.

Q. Now when—you said difficulty doing dishes, what's the problem when you're doing the dishes, ma'am?

A. I drop them. I can't hold onto them. I break dishes all the time.

Q. Are you able to pick up like a small coin from the table?

A. No. No. My kids pick things up for me, hand me things. If they were old enough to wash the dishes, they'd do that, too.

Q. And is this both your hands, ma'am?

A. Yeah. The right hand's worse but it's both, yeah.

\* \* \*

A. Not long. If I'm wash—I can wash the dishes maybe a half hour but then I have to sit to wash the dishes, sit to cook supper, sit to take a shower.

Q. How long can you stand at one time before you need to change

---

[2]This Court realizes that this testimony has already been quoted in this opinion, but believes that it bears repeating at this point.

       positions?

A. Not long. A couple of minutes.

Q. And walking, how much walking can you do before you need to change positions?

A. Not long distance. I can't walk to the store.

Q. And how far away is that?

A. Right next door.

Q. And how much weight do you think you could lift, Ms. Branch?

A. About a jug of milk. I can't—my kids carry the groceries in the house for me. I go grocery shopping, I hold onto the cart in front of me. The kids put the groceries in the cart. We go to Save-A-Lot. The kids put the groceries onto the conveyor belt. My son bags the groceries for me. My older son carries the groceries in the house.

                  \*   \*   \*

Q. And what's a typical day like for you, Ms. Branch?

A. If I don't do any housework, laying on the couch.

Q. And are you laying on your back or your side?

A. It varies. I have to switch positions.

Q. Uh-huh. And how much of your day, and I'm not talking about night when you're sleeping, but a normal average day for you do you spend laying on the couch?

A. Hours.

Q. About how many, ma'am, is your best guess?

A. Well, if I don't do housework, from the time my kids go to school until about an hour before they come home from school, then I get up and make supper. I'll wash the dishes, clean the kitchen like very to or three days. I vacuum every two or three

>    days. I don't do my laundry. My neighbor does my laundry for me. I'll fold the clothes. My son'll go over and get the clothes and bring them back home. I'll fold them. The kids put their clothes away. But I fold the clothes, I have to stop and let my hands rest because they become numb. My shoulders hurt to fold the clothes.
>
> Q. How long can you fold the clothes before your hands—before you need to take that break?
>
> A. About 15 minutes, 10, 15 minutes. If I brush my daughter's hair, I have to stop to let my hand—hold her ponytail with one hand, let the other hand rest, than hold the ponytail with the other hand. My kids sometimes brush my hair for me.

At the risk of seeming to fly-speck the ALJ's decision (as he did with Dr. Orra's patient note), this Court is struck by the sentence reading "Ms. Branch may be deconditioned due to her inactivity, but there is no evidence to suggest that Ms. Branch is bedridden." One need not be bedridden to be deemed disabled, and there is absolutely no evidence that the plaintiff is deconditioned due to her inactivity. She is morbidly obese, and the reason for this does not appear in any of the medical evidence.

Dr. Marshall is not the only physician to cast doubt on the plaintiff's physical capabilities. In October 2003 Dr. Wilfredo Paras evaluated the plaintiff upon referral of the Social Security authorities. His conclusion was "In summary, based on the history and objective findings, this claimant's ability to perform work related physical activities appears to be markedly and severely restricted mainly because of her generalized joint and muscle pain, as well as her marked obesity which appears to contribute to her difficulties." This Court considers the ALJ's rejection of Dr. Paras' opinion on the basis that "Dr. Paras' opinion is, of course, based on a one-time physical

11

examination.[3]  His opinion conflicts with Ms. Branch's ability to live independently and also conflicts with her treating physicians' recommendations of exercise for weight loss" to border on specious.

In this Court's opinion the only conclusion that this record supports applying the substantial evidence standard of Richardson v. Perales, 402 U.S. 389 (1971) and respecting the treating physician rule is that this plaintiff is disabled.  It is, therefore, recommended that final judgment be entered in plaintiff's favor reversing the defendant's final determination and finding that she is entitled to an award of the SSI benefits she seeks during such period following her application date that she satisfies the economic criteria for such benefits.


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:    November 9, 2007



**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[3] Over the many years that this Court has been reviewing Social Security appeals this Court has seldom found an ALJ discounting a one-time consultative examination when the consultant's report was adverse to the claimant.